## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SANDRA CURET,

      **Plaintiff,**

vs.                                                                                              Case No.

**ULTA SALON, COSMETICS &**
**FRAGRANCE, INC.,**

      **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SANDRA CURET ("Curet" or "Plaintiff"), by and through her undersigned attorneys, states as follows in her Complaint against ULTA SALON COSMETICS FRAGRANCES, INC., ("ULTA" or "Defendant"), and in support thereof states as follows:

## INTRODUCTION

1.      This is an action to secure relief, legal, equitable, injunctive, and punitive, based upon ULTA's discriminatory employment practices on the basis of race (Black), national origin (Hispanic/Latino), and /or color (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, *et seq.*

2.      In violation of Title VII, ULTA discriminated against Curet during her employment with ULTA because of Curet's race, national origin, and/or color.  Curet was harassed, retaliated against, and finally terminated for complaining about discrimination at ULTA.

3.      Curet requests declaratory and injunctive relief to redress ULTA's discriminatory employment policies, practices, and procedures. Curet further seeks back pay; front pay; compensatory damages; nominal, liquidated and punitive damages; and attorneys' fees and costs.

## PARTIES

4.      Curet is an individual over eighteen years of age, residing and domiciled in Pasco County, Florida and is otherwise sui juris. During all relevant times, Curet was an "employee" as defined by Title VII.

5.      Defendant is a national American corporation, providing beauty retail products and salon services, with its headquarters registered in Illinois, USA. Curet was employed at Defendant's retail business located in Brooksville, Florida at 7211 Coastal Boulevard. Defendant is a foreign corporation authorized to conduct business and is conducting business in the State of Florida. At all times material hereto, ULTA has been an "employer" as defined by Title VII.

## JURISDICTION AND VENUE

6.      Venue is proper in this Judicial Circuit as all the events arising out of this cause arose in this Judicial District. Venue of this action is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

7.      Subject matter jurisdiction is conferred on this Court by 28 U.S.C. §1331, 42 U.S.C. § U.S.C. § 2000e-5(f)(3).

## ADMINISTRATIVE PROCEEDINGS

8.      On March 20, 2020, Curet filed a Dual Charge of Discrimination against ULTA with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR"), charging ULTA with discrimination, a true and accurate copy of

which is attached hereto as **Exhibit A** and incorporated herein.  (EEOC Charge No. 511-2020-02529).

9.      With respect to Curet's dual-filed charge, the EEOC issued a Notice of Right to Sue dated April 28, 2021, a true and accurate copy of which is attached hereto as **Exhibit B**,

10.     Curet filed this lawsuit on July 26, 2021, within 90 days of the date the Notice of Rights was received by Curet.

11.     Curet timely filed a dual-charge of discrimination with the EEOC and has met all administrative prerequisites for the bringing of this action.

## FACTUAL ALLEGATIONS

12.     ULTA is a corporation with a prominent presence in the United States of America, where it provides retail beauty products and salon services at over 1,200 retail stores.

13.     Curet began working for ULTA on April 26, 2018 as a Designer "Stylist" at Defendant's retail store in Brooksville, Florida.

14.     Curet was hired by Meaghan Lanza, who was then soon promoted to District Manager, and replaced by new store manager Tammy Parsons.

15.     Subsequently, Curet's immediate supervisors, in succession, were salon managers Jessica Welch (April 2018 – March 2019) and "Zan" Oliva (March 2019 – October 2019).  Both salon managers discriminated against Curet.

16.     Additionally, store manager Tammy Parsons was also complicit, and participated in the harassment and discrimination against Curet.

17.     ULTA considered Curet a black African American individual and designated her as such in its corporate business documents.

18.     Curet nation origin is Hispanic/Latino (Puerto Rican) and her race is Black.

19.     Just a month after starting, Curet's hours were reduced, and her schedule revised arbitrarily without notice or consultation, in violation of company policy in a manner calculated to lower her income, demoralize her, and undermine her productivity.

20.     Curet's co-stylists, including non-black/Hispanic (and also new hires), were instead given favorable schedules.

21.     Curet repeatedly complained, including written complaints, to human resources about ULTA's discrimination, but there was no correction of the discrimination.  Instead, harassment and retaliation against Curet increased.

22.     Instead, after each formal complaint, each salon manager, Jessica Welch and Zan Oliva, escalated their harassment of Curet.  Both salon managers increasingly demonstrated a hostile attitude towards Curet and punished her by reducing her hours, modifying her schedules, and diverting clients from Curet.

23.     Curet spoke with Human Resources multiple times via telephone during the tenure of both salon managers.

24.     ULTA diverted Curet's existing clients and new guests, including guests which requested Curet's services to other stylists.

25.     Curet's existing clients and new guests were diverted to non-black Hispanic co-stylists.

26.     Curet was ordered to leave the store premises as soon as she was "off the clock".

27.     Other stylists, including non-black/Hispanic, were not instructed to similarly leave the premises when they were "off the clock".

28.     Curet's hairstyling skills were disparaged in the presence of her clients by her salon managers.

29.     Curet informed Tammy Parsons in person about her harassment but Parsons was indifferent to the discrimination endured by Curet.

30.     Due to Curet's formal complaints to human resources, district manager Meaghan Lanza was also aware of Curet's harassment and discrimination but Lanza was also indifferent and ignored Curet's pleas for help.

31.     Curet was instructed to clean bathroom toilets and collect bathroom waste, by Oliva, while white, American employees, and non-black/Hispanics, were not prompted to do likewise.  Cleaning toilets is not a job responsibility for a Stylist and ULTA utilized a third-party company to perform cleaning service for its Brooksville store.

32.     ULTA manufactured pretextual reasons to terminate Curet on October 4, 2019.

33.     ULTA's pretextual reason for Curet's termination was that Curet inappropriately measured and attempted to discard a haircare product.

## COUNT I

### RETALIATORY HARRASSMENT
### VIOLATION OF TITLE VII
### 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 2000e-3(a).

34.     Curet re-alleges and incorporates by reference paragraphs 1 through 33 as though fully set forth herein.

35.     Defendant ULTA, an employer of Curet within the meaning of Title VII, has discriminated against Curet in retaliation for complaining about discrimination.

36.     Curet's managers and supervisors harassed Curet in retaliation because she openly complained about mistreatment attributable to her race/national origin/color.

37.     ULTA's discriminatory acts would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

38.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Curet, entitling Curet to punitive damages.

39.     By reason of the continuous nature of Defendant's discriminatory conduct, which persisted throughout Curet's employment, Curet is entitled to the application of the continuing violations doctrine to all violations alleged herein.

**WHEREFORE**, Curet respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.     An Order declaring that ULTA violated her civil rights under Title VII;

B.     Back pay, front pay, and other benefits lost as a result of Curet unlawfully being discriminated against;

C.     Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by ULTA's unlawful actions;

D.     The attorneys' fees and costs incurred by her; and

E.     Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of Title VII, including an award of punitive damages, and injunctive relief requiring Defendant to create new policies and procedures to address discrimination.

## COUNT II

### RETALIATION
### VIOLATION OF TITLE VII
### 42 U.S.C. § 2000e-3(a)

40.     Curet re-alleges and incorporates by reference paragraphs 1 through 33 as though fully set forth herein.

41.     Curet engaged in protected activity that included, but is not limited to, complaining to ULTA about race/national origin/color discrimination.

42.     Curet openly opposed discrimination at ULTA, and on numerous occasions complained to her managers and superiors, and also human resources to address and rectify the discrimination against her.

43.     ULTA terminated Curet's employment in retaliation for her discrimination complaints.

44.     ULTA also retaliated against Curet by, *inter alia*: undermining her work performance; diverting existing and new clients; detrimentally reducing and changing work schedules. ULTA further retaliated against Curet by facilitating and maintaining an environment in which her managers and supervisors engaged in acts intended to humiliate and demean her. These adverse employment actions materially and adversely changed Curet's overall terms and conditions of employment.

45.     ULTA's retaliatory acts against Curet were a direct and proximate result of her protected activities.

46.     A reasonable employee would find ULTA's retaliatory acts materially adverse and such acts would dissuade a reasonable person from making or supporting a charge of discrimination.

47.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard to Curet's rights, entitling her to punitive damages.

**WHEREFORE**, Curet respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.      An Order declaring that ULTA violated her civil rights under Title VII;

B.      Back pay, front pay, and other benefits lost as a result of her unlawfully being discriminated against;

C.      Compensatory and punitive damages in an amount to be determined at trial to compensate her for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, loss of enjoyment of life, and detrimental impact on her health caused by AAA's unlawful actions;

D.      The attorneys' fees and costs incurred by her; and

E.      Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of Title VII, including an award of punitive damages, and injunctive relief requiring Defendant to create new policies and procedures to address discrimination.

## COUNT III

**WRONGFUL TERMINATION – DISPARATE TREATMENT**
**VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e-2(a)(1)**

48.      Curet re-alleges and incorporates by reference paragraphs 1 through 33 as though fully set forth herein.

49.      ULTA undermined Curet's work performance by reducing her hours, arbitrarily modifying her schedule, and diverting customers from Curet.

50.      ULTA wrongfully terminated Curet's employment because of her race/national origin/color.

51.      ULTA's wrongful termination of Curet was a direct, proximate, and pretextual result of discrimination and her protected activities.

52.      ULTA's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard to Curet's rights, entitling her to punitive damages.

**WHEREFORE**, Curet respectfully requests that the Court enter judgment in her favor and award her the following relief:

A.      An Order declaring that ULTA violated her civil rights under Title VII;

B.      All statutory and equitable damages, including lost wages in the form of back pay, front pay, other benefits and compensation, as well as harm in the form of humiliation, embarrassment, emotional and physical distress, and mental anguish, plus interest thereon;

C.      All statutory, legal, and equitable remedies available for Title VII, including an award of punitive damages;

D.      The attorneys' fees and costs incurred by her; and

E.      Such other legal, injunctive, and equitable relief as may be just and appropriate for violations of Title VII, including an award of punitive damages, and injunctive relief requiring Defendant to create new policies and procedures to address discrimination.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Curet demands a trial by jury in this action.

Dated: July 26, 2021                          Respectfully submitted,


/s/ *Derek P. Usman*
Derek P. Usman
Florida Bar No. 0120303
Email: derek@usmanfirm.com

**The Usman Law Firm, P.A.**
20701 Bruce B Downs Blvd.
Suite 207
Tampa, FL 33647
(813) 377-1197 telephone
*Attorney for Plaintiff*