```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
```

SANDRA CURET,

    Plaintiff,
v.                                Case No. 8:21-cv-1801-VMC-TGW

ULTA SALON, COSMETICS
& FRAGRANCE, INC.,

    Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Ulta Salon, Cosmetics & Fragrance, Inc.'s Motion for Judgment as a Matter of Law (Doc. # 75), filed on January 11, 2023. Sandra Curet responded on January 24, 2023, (Doc. # 76), and Ulta has replied. (Doc. # 79). For the reasons that follow, Ulta's Motion is granted.

**I. Background**

The parties and the Court are familiar with the underlying facts and the Court need not restate them here. Plaintiff Sandra Curet initiated this action against her former employer, Ulta, on July 26, 2021. (Doc. # 1). Ms. Curet's complaint asserted claims for retaliatory hostile work environment, retaliation, and race discrimination. (Id.).

After discovery, Ulta moved for summary judgment on all claims. (Doc. # 18). The Court granted summary judgment on Ms. Curet's retaliation and race discrimination claims, but denied it as to her retaliatory hostile work environment claim. (Doc. # 32).

Prior to trial, Ulta moved to bifurcate the issue of punitive damages from the remainder of the trial. (Doc. # 25 at 10-11). The Court granted the motion. (Doc. # 44).

The case proceeded to trial on the retaliatory hostile work environment claim. At the close of evidence, Ulta moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). (Doc. # 55). The Court reserved ruling on that motion. (Doc. # 56).

The case then went to the jury, which returned a verdict in Ms. Curet's favor. (Doc. # 67). The jury awarded Ms. Curet $20,000 in compensatory damages. (Id.). The case then proceeded to the punitive damages phase of the trial. Prior to the jury's deliberations, Ulta moved for judgment as a matter of law on the issue of punitive damages, on which the Court reserved ruling. (Doc ## 64, 65). The jury subsequently found that punitive damages in the amount of $40,000 should be awarded in Ms. Curet's favor. (Doc. # 69).

Now, Ulta has renewed its motion for judgment as a matter of law under Rule 50(a) and, alternatively, seeks judgment as a matter of law under Rule 50(b). (Doc. # 75). Ms. Curet has responded (Doc. # 76), and Ulta has replied. (Doc. # 79). The Motion is ripe for review.

## II. Legal Standard

Federal Rule of Civil Procedure 50(a) provides:

> once a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on any claim that requires a favorable finding on that issue.

Fed. R. Civ. P. 50(a).

"Under Rule 50, a court should render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192 (11th Cir. 2004). Courts should grant judgment as a matter of law only "if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1246 (11th Cir. 2001). But "[c]redibility determinations, the weighing of the evidence,

and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000).

### III. Analysis

#### A. Ulta's Rule 50(a) Motion — Retaliatory Hostile Work Environment

To establish a prima facie case for a retaliatory hostile work environment, a plaintiff must show: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there is a causal link between the adverse action and the protected activity. Lucas v. W.W. Grainger, 257 F.3d 1249, 1260 (11th Cir. 2001). As to the materially adverse prong, the plaintiff must show that the conduct complained of "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Monaghan v. Worldpay U.S. Inc., 955 F.3d 855, 862 (11th Cir. 2020).

However, unlike Title VII retaliation claims, which are based on discrete acts, the "very nature" of a hostile work environment claim "involves repeated conduct." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). Hostile work environment claims are based on the "cumulative effect of individual acts," each of which "may not be actionable on

its own." Id. Courts thus treat the "series of separate acts" comprising a retaliatory hostile work environment claim as "one unlawful employment practice." Id. at 103 (internal quotations omitted).

As to causation, a plaintiff must demonstrate a link between her EEO activity and the totality of events allegedly creating a hostile work environment. See Terrell v. McDonough, No. 8:20-cv-64-WFJ-AEP, 2021 WL 4502795, at *9 (M.D. Fla. Oct. 1, 2021) (rejecting plaintiff's retaliatory hostile work environment claim where she failed to link the allegedly adverse actions to her EEO activity). To do so, "[t]he plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action." Debe v. State Farm Mut. Auto. Ins., 860 F. App'x 637, 639 (11th Cir. 2021).

The parties agree that Ms. Curet engaged in protected activity by making hotline complaints alleging race discrimination, harassment, and retaliation on March 4, 2019; April 11, 2019; May 30, 2019; June 30, 2019; and August 27, 2019. (Doc. # 40 at 6). The parties also agree that Ms. Curet's retaliatory hostile work environment claim is limited to three written warnings issued in August and September 2019. (Doc. # 40 at 7). The first occurred on August 17, when Ms.

5

Curet was asked to leave prior to her shift ending. (Doc. # 70-3). Ms. Curet's shift was not scheduled to end until 2:00 pm, but because her only appointment for the day was at 11:00 am, Zan Oliva, the salon manager of the Ulta location where Ms. Curet worked, asked her to leave at 1:15 pm. (Id.). Ms. Curet did not want to leave because doing so would mean she was unable to service walk-in customers, so she refused when Ms. Oliva asked her to go home. (Id.; Doc. # 72 at 130:22-25). Ms. Curet only left after Megan Lanza, the District Manager, called the store to tell her to leave, resulting in Ms. Oliva issuing a written warning. (Doc. # 70-3). Ms. Oliva then documented the incident and informed Ms. Curet that she was doing so. (Doc. # 72 at 132:7-18).

The second written warning occurred on September 14, 2019, when Ms. Oliva and Tammy Parsons, the General Manager of the Ulta store where Ms. Curet worked, with Ms. Lanza's approval, placed Ms. Curet on a final written warning in Ulta's system. (Doc. # 70-4). Ms. Parsons and explained this was because of Ms. Curet's insubordinate conduct. (Doc. # 72 at 91:9-12.). The day before, on September 13, Ms. Oliva and Ms. Curet were involved in a disagreement over mopping the floor. (Doc. # 71 at 46:5-47:2). Ms. Curet refused to mop the floor with a mop and bucket as instructed, which led Ms. Oliva

6

to issue a written warning. (Doc. # 72 at 91:2-12; Doc. # 70-4). In the written warning, Ms. Oliva explained that Ms. Curet had refused to perform the job as required of a closing employee. (Id.). On that day, Ms. Curet clocked out at 6:44 pm, and the store did not close until 9:00 pm. (Doc. # 70-6 at 14; Doc. # 71 at 47:20-25). However, at trial, Ms. Oliva testified that it would not be unusual to ask stylists to begin mopping before closing time, and that she had, on other occasions, asked stylists other than Ms. Curet to begin mopping before closing time. (Doc. # 72 at 135:14-24).

The third written warning occurred on September 18, 2019, after Ms. Oliva reprimanded Ms. Curet over her use of Keratin, a hair product she used in her services, while Ms. Curet was treating a client. (Doc. # 70-5). While Ms. Curet was performing a Keratin treatment, Ms. Oliva informed her that she was pouring too much Keratin and wasting the product. (Doc. # 71 at 50:1-10). Ms. Curet stated that the Keratin was reusable. (Id. at 50:12-14). However, Ms. Lanza testified that Keratin is not reusable, so it would not be proper for a salon employee to rebottle Keratin. (Doc. # 72 at 37:5-17).

After removing the bowl with the excess Keratin from Ms. Curet's workstation, Ms. Oliva took Ms. Curet to the break room to discuss the incident. (Doc. # 72 at 140:13-19). Ms.

Parsons walked in on the conversation after returning from lunch and testified that Ms. Curet had her voiced raised during that conversation. (Doc. # 72 at 92:9-19). Thereafter, Ms. Oliva documented Ms. Curet's conduct and issued a written warning. (Doc. # 72 at 143:9-10).

Ulta contends that Ms. Curet failed to adduce sufficient evidence at trial to permit a jury to find (1) that Ms. Curet suffered a materially adverse employment action; and (2) that Ms. Curet's three written warnings were because of her protected activity. (Doc. # 75 at 7). The Court will address each argument in turn.

### 1. **Materially Adverse Employment Action**

Ulta contends that the three written warnings issued to Ms. Curet, even when viewed collectively, do not rise to the level of a materially adverse employment action because the warnings failed to result in a reduction in pay, benefits, or responsibilities. (Doc. # 75 at 10). Ms. Curet falls back on the Court's summary judgment order, highlighting the determination that "[a] reasonable jury could find that the issuance of three written warnings in less than a month's time 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" (Doc. # 32 at 21-22) (quoting Monaghan, 955 F.3d at 862).

8

In setting out the "materially adverse employment action" standard, the Supreme Court has specified that such a standard is objective. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69 (2006). However, in doing so, the Court emphasized that it "phrase[d] the standard in general terms because the significance of any given act of retaliation will also depend upon the particular circumstances." Id. The Eleventh Circuit has thus opined that "Burlington strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered "materially adverse" to [the employee] and thus constitute adverse employment actions." Crawford v. Carroll, 529 F.3d 961, 974 n.13 (11th Cir. 2008).

Here, the evidence presented at trial is sufficient to support the jury's finding that Ms. Curet suffered an adverse employment action. The jury was presented with the three written warnings that Ms. Curet received. The jury also heard testimony from Ms. Lanza that a formal written warning could precede a final written warning, which "would lead to and can lead to termination." (Doc. # 72 at 25:23-25).

Although Ulta has cited to several cases in which written warnings were not considered materially adverse employment actions, those cases do not stand for the proposition that

9

written warnings cannot constitute adverse employment actions as a categorical matter. See Debe, 860 F. App'x at 641 (finding "unjustified coaching, increased scrutiny, [and] unfounded discipline" insufficient to demonstrate an adverse effect where the plaintiff did not demonstrate they resulted in objective harm"); see also Comerinsky v. Augusta Coating & Mfg., LLC, 418 F. Supp. 3d 1252, 1263 (S.D. Ga. 2019) ("Although reprimands are not, *per se*, materially adverse changes under Title VII, they may qualify as adverse employment actions under the particular circumstances of a case."); Brathwaite v. Sch. Bd. of Broward Cnty., Fla., 763 F. App'x 856, 860 (11th Cir. 2019) ("The Eleventh Circuit has not yet held, in a published opinion, whether reprimands alone can or should constitute materially adverse changes under Burlington.").

Thus, while the jury was not required to make such a finding based on the evidence presented at trial, it was nevertheless permitted to reach the conclusion that the three written warnings — including a final written warning — were materially adverse. The jury was presented with evidence that Ms. Curet experienced formal discipline for her conduct. The jury also heard Ms. Lanza's testimony that such discipline could be a precursor to termination. Given that inquiry under

10

Burlington is "fact-specific," the Court declines to conclude that the evidence as to the materially adverse employment actions is "so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." Brathwaite, 763 F. App'x at 860; Middlebrooks, 256 F.3d at 1246. The jury was entitled to find that Ms. Curet suffered a materially adverse employment action based on the evidence presented at trial.

### 2. Causation

Ulta argues that Ms. Curet failed to present any evidence at trial from which a jury could infer that Ms. Oliva, who issued the three written warnings to Ms. Curet, was aware of Ms. Curet's protected activity. (Doc. # 75 at 12). Thus, according to Ulta, Ms. Curet has failed to demonstrate a causal connection between her protected activity and adverse employment actions.

Ms. Curet contends that a jury could infer that Ms. Oliva was made aware of Ms. Curet's hotline complaints from the fact that all Ulta managers and HR employees routinely communicated about the operations of the salon where Ms. Curet worked. (Doc. # 76 at 15). Ms. Curet also highlighted the Court's analysis set forth in its summary judgment order (Doc. # 32) and its order denying Ulta's motion for reconsideration.

11

(Doc. # 52). Arguing in opposition to Ulta's motion for judgment as a matter of law at the close of Ms. Curet's case, Ms. Curet's counsel represented that the specific evidence of Ms. Oliva's knowledge was Ms. Oliva's presence at two meetings where Ms. Curet's performance was discussed. (Doc. # 72 at 7:22-25).

"As a starting point for any retaliation claim, a plaintiff needs to show (among other things) that the decisionmaker actually knew about the employee's protected expression." Martin v. Fin. Asset Mgmt. Sys., Inc., 959 F.3d 1048, 1053 (11th Cir. 2020). "[I]nferences in favor of a plaintiff can be based only on evidence — not on speculation." Id. at 1058. Here, the relevant decisionmaker is Ms. Oliva, because she was the manager who issued the three written warnings forming the basis of Ms. Curet's retaliatory hostile work environment claim. The Court recognizes that Tammy Parsons, alongside Ms. Oliva, placed Ms. Curet on the final written warning on September 14, 2019. (Doc. # 18-4 at ¶ 12). But that written warning, which was issued on September 14, 2019, is the only instance of an adverse employment action that Ms. Parsons is alleged to have participated in. In the Court's summary judgment order, it reasoned that there was sufficient evidence to support an inference that Ms. Parsons

12

became aware of Ms. Curet's protected activity during an April 12, 2019, meeting. (Doc. # 32 at 3; Doc. # 21-2 at 2). Because "[a] three-to-four-month delay" between an employer's discovery of protected activity and adverse action is "too long," Ms. Curet cannot establish a causal link between her protected activity and any adverse action undertaken by Ms. Parsons. Debe, 860 F. App'x at 639. Thus, only Ms. Oliva's knowledge is germane to the issue of causation.

On summary judgment, the Court determined that a factual dispute existed as to whether Ms. Oliva was aware of Ms. Curet's hotline complaints. The Court highlighted the June 5, 2019, meeting, where Ms. Lanza sat down with Ms. Curet and Ms. Oliva to discuss Ms. Curet's concerns, focusing on Ms. Curet's issues with her schedule. (Doc. # 32 at 3). This meeting occurred after Ms. Curet had submitted a hotline complaint on May 30, 2019. (Doc. # 21-3 at 1). The Court noted that during that meeting, Ms. Lanza discussed the importance of clear communication and creating an environment where Ms. Curet felt comfortable voicing her concerns with Ms. Oliva. (Doc. # 32 at 3). The Court thus concluded that a reasonable jury could infer that Ms. Oliva became aware of Ms. Curet's protected activity by virtue of the June 5, 2019, meeting. (Id. at 23).

Ulta thereafter filed a motion for reconsideration as to Ms. Curet's retaliatory hostile work environment claim, specifically homing in on the issue of Ms. Oliva's knowledge. (Doc. # 35). However, the Court denied the motion, reiterating that "being asked to meet with the District Manager regarding a subordinate could indicate to someone in Ms. Oliva's position that protected activity had occurred." (Doc. # 52 at 4-5).

But the jury never heard the evidence on which this Court had relied at the summary judgment stage in finding a genuine dispute of fact. While the Court's summary judgment and reconsideration orders noted that evidence concerning the June 5, 2019, meeting could support an inference of knowledge, Ms. Curet failed to develop such evidence at trial.

Indeed, Ms. Curet's evidence at trial failed to establish that Ms. Oliva even attended the two meetings between Ms. Curet and her supervisors, much less that Ms. Oliva became aware of Ms. Curet's protected activity during these meetings. During Ms. Curet's testimony, her counsel asked her about the complaint that she filed on May 30, 2019. (Doc. # 71 at 38:1-2). Counsel then asked Ms. Curet with whom she discussed the complaint after it was filed. (Id. at 38:4-5). Ms. Curet stated that she spoke with Meghan Lanza. (Id.

14

at 38:6). Ms. Curet did not provide any testimony indicating that Ms. Oliva was present at the meeting to discuss the May 30, 2019, complaint, or that Ms. Curet discussed the complaint with Ms. Oliva at any point. Nor did counsel for Ms. Curet ask her at any point whether Ms. Oliva attended this meeting.

Further, Ms. Oliva testified that she did not have any in-person meetings with Ms. Curet to specifically discuss any complaints that Ms. Curet had made. (Doc. # 72 at 146:4-21). And at no point during her testimony did Ms. Oliva reference the June 5, 2019, meeting with Ms. Curet and Ms. Lanza. See (Doc. # 21-4 at 2) (documenting the June 5, 2019, meeting). Nor did counsel for Ms. Curet inquire, on cross-examination, whether Ms. Oliva had attended a meeting on June 5, 2019.

Ms. Lanza testified that during the meetings that she had with Ms. Curet and other employees at the Ulta salon, she did not indicate during the meeting that Ms. Curet had engaged in protected activity. (Doc. # 72 at 57:8-18).

In short, at summary judgment, the Court based its determination that a factual dispute existed as to Ms. Oliva's knowledge based on a June 5, 2019, meeting that occurred between Ms. Curet, Ms. Oliva, and Ms. Lanza. (Doc. # 32 at 3). But at trial, Ms. Curet did not even move to introduce the record evidence that the Court relied on and cited to in

15

both its summary judgment and reconsideration orders. See (Doc. # 70) (noting the exhibits admitted during trial). Likewise, at trial, Ms. Curet did not attempt to elicit testimony from either her single witness or any of the defense witnesses regarding Ms. Oliva's presence at the June 5, 2019, meeting.

Without evidence of Ms. Oliva's presence at any meeting regarding Ms. Curet's hotline complaints, the jury here could not have reasonably inferred that Ms. Oliva was aware of Ms. Curet's protected activity. In the absence of that meeting, the only evidence Ms. Curet highlights as probative of Ms. Oliva's awareness relies on impermissible speculation. See Martin, 959 F.3d at 1054 (noting that speculation cannot support a jury's inferences). Specifically, Ms. Curet contends that the "constant interaction" between managers and HR employees at Ulta is circumstantial evidence that Oliva became aware of Ms. Curet's protected activity. (Doc. # 76 at 6). The Court disagrees. As Ulta emphasizes, "'could have told' is not the same thing as 'did tell.'" Clover v. Total Sys. Servs. Inc., 176 F.3d 1346, 1355 (11th Cir. 1999). That Ms. Oliva and Ms. Lanza may have communicated at some point in time between when Ms. Curet submitted her hotline

16

complaints and when Ms. Oliva issued the written warnings does not establish knowledge.

Because Ms. Curet failed to present evidence at trial from which the jury could have inferred that Ms. Oliva was aware of Ms. Curet's protected activity, Ms. Curet did not prove causation as to her retaliatory hostile work environment claim. Thus, judgment as a matter of law is appropriate.

### B.   Ulta's Rule 50(a) Motion — Punitive Damages

Ulta also contends that there was insufficient evidence to support a punitive damages award and seeks judgment as a matter of law on the issue of punitive damages. (Doc. # 75 at 18). Because the Court has determined that judgment as a matter of law on Ms. Curet's single claim presented at trial is appropriate, Ms. Curet is not entitled to punitive damages. See Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1205 (11th Cir. 2004) ("[T]he jury's failure to find any legal basis for imposing civil liability . . . necessarily precludes any award of punitive damages.").

### C.   Ulta's Rule 50(b) Motion

In the alternative, Ulta moves to renew its motion for judgment as a matter of law under Federal Rule of Civil Procedure Rule 50(b). (Doc. # 75 at 20-21). Because the Court has determined that judgment as a matter of law is appropriate

pursuant to Ulta's motion under Rule 50(a), it need not undertake an analysis under Rule 50(b).

Accordingly, it is

**ORDERED, ADJUDGED, and DECREED:**

(1) Defendant Ulta Salon, Cosmetics & Fragrance, Inc.'s Motion for Judgment as a Matter of Law (Doc. # 75) is **GRANTED.**

(2) Ulta is entitled to judgment as a matter of law on Plaintiff Sandra Curet's retaliatory hostile work environment claim.

(3) The Clerk is directed to enter judgment accordingly and, thereafter, **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 19th day of May, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE